UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MIKE FELIX, 05-B-1196,

        Petitioner,

        -v-                                08-CV-0452(MAT)
                                                **ORDER**

JAMES CONWAY,

        Respondent.

---

## I.    Introduction

Petitioner, who is represented by counsel, has filed a timely petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Supreme Court, Erie County, of Attempted Rape in the First Degree (N.Y. Penal L. §§ 110.00, 130.35 [1]), Sexual Abuse in the First Degree (§ 130.65[1]) and Assault in the Second Degree (§ 120.05[2]) following a jury trial before Justice Joseph Forma. Petitioner was sentenced to a determinate term of imprisonment of fifteen years on the attempted rape count, concurrent to two seven-year determinate terms for the sexual abuse and assault counts. R. 1680-1681.[1]

## II.  Factual Background and Procedural History

Petitioner's conviction arose from an incident that occurred on August 4, 2003, wherein he attacked Sandra Handel ("the victim") in her apartment after the two had drinks together at a pub near Depew, New York. After the victim rejected petitioner's sexual

---

[1] Citations to "R.__" refer to pages of the Record on Appeal.

advances, petitioner ripped the victim's shirt, pinned her on the ground, and struck her with his hands and a telephone when she attempted to fight him off by hitting him in the groin with her knee. After unsuccessfully attempting to pull the victim's pants completely off, he put his fingers in her vagina. Restraining the victim by sitting on her, he then asked if she would watch him masturbate. According to the victim's trial testimony, petitioner thrust his penis into her mouth, and she started choking. Petitioner then ejaculated on her face and hair, and hit her again with the phone. He left the apartment telling the victim, "tell Chris that he got what he deserved." R. 603-611. The attack was apparently retaliation against Chris Chojnacki, a close friend of the victim's who had recently been intimate with petitioner's on-again off-again girlfriend, Jeanette.[2] Petitioner knew the victim was acquainted with Chris from chatting with her on a few different occasions at a local bar, Page's, and at Gold's Gym, to which the victim belonged and where petitioner worked out from time to time. According to the victim, petitioner went by the name of "Chad". R. 602-14, 990-91.

The victim testified that after the assault she threw away her blouse and showered. She did not go to a doctor because she did not want to talk about it, and told her co-workers the following day that she accidentally fell, to explain the bruises on her face,

---

[2] Petitioner and Chris previously had a verbal altercation at Page's over Chris's involvement with Jeanette. R. 965-67.

which she tried to cover with make-up. The victim told the same story to a police officer that had come into the restaurant where she worked. Two days later, she disclosed to a close friend that she had been sexually assaulted, revealing bruises on the inside of her upper arms where the petitioner had pinned her to the floor. R. 613-14, 761-64, 1202-05.

John Garbo ("Garbo") lived in the apartment below the victim's. The night of the incident, Garbo heard the victim screaming, crying, and saying "please leave" and "stop it." He also heard "rumbling around" and then a loud bang on the floor. Garbo testified that he had never heard anything like that from the victim's apartment in the past, and did not call police or do anything because he did not want to get involved. R. 768-73.

On August 6, 2003, petitioner and Jeanette had gotten back together, and petitioner visited Jeanette at her house. That evening, Jeanette noticed that petitioner had cut and dyed his hair. He told her that he was angry and stressed out, and that he was "losing his friends" and "getting heavier because of a back injury and he couldn't work out." A few days later, petitioner again appeared agitated, and told Jeanette that he thought someone was following him. Petitioner began driving cars that did not belong to him. R. 971-72, 977. Jeanette testified at trial that petitioner had twice sat on her chest with his knees holding her

upper arms down, while he masturbated and ejaculated on her. R. 987-88.

After the attack was reported to police and petitioner became a suspect, Cheektowaga detectives obtained a fifteen-year old yearbook photograph of petitioner and asked the victim to look at all of the senior pictures. The victim could not find petitioner in the yearbook. R. 252-53. She did, however, identify petitioner, whom she knew as Chad, as her attacker from two lineups. R. 631-34.

At the conclusion of the trial, the jury acquitted petitioner of the top count in the indictment, Sodomy in the First Degree, and found him guilty of Attempted Rape in the First Degree, Sexual Abuse in the First Degree, and Assault in the Second Degree. R. 5, 24-24. Petitioner was subsequently sentenced to concurrent terms of imprisonment of fifteen years for the attempted rape and seven years each for the assault and sexual abuse. R. 1680-81.

Petitioner appealed his conviction to the Appellate Division, Fourth Department, on the following grounds: (1) the trial court erred in admitting prejudicial evidence of prior, uncharged acts; (2) the trial court erred in admitting hearsay testimony under the "prompt outcry" exception; (3) the victim's identification was improperly bolstered by a third party; and (4) the lineup was tainted by a photograph improperly taken by police without consent after a pretextual stop. Resp't Exhibits ("Ex.") B. The Appellate Division unanimously affirmed the judgment of conviction. People v.

Felix, 32 A.D.3d 1177 (4ᵗʰ Dept. 2006). Petitioner sought leave to appeal to the New York Court of Appeals on the sole ground that the Appellate Division misapplied the "prompt outcry" exception to hearsay evidence. Ex. C. The New York Court of Appeals denied petitioner's application on December 19, 2006. People v. Felix, 7 N.Y.3d 925 (2006). Petitioner then sought a writ of *error coram nobis* in the Fourth Department, on the basis that his appellate counsel was ineffective for failing to raise the following issues on appeal: (1) the verdict was against the weight of the evidence and was not supported by legally sufficient evidence; and (2) the sentence was harsh and excessive. Ex. D. That motion was summarily denied by the Appellate Division on February 1, 2008. People v. Felix, 48 A.D.3d 1212 (4ᵗʰ Dept.), lv. denied, 10 N.Y.3d 862 (2008).

This habeas petition followed, in which petitioner raises the same grounds as he did on direct appeal and in his application for writ of *error coram nobis*. Petition ("Pet.") at 6-10. For the reasons that follow, the Court finds that petitioner is not entitled to the writ, and the petition is dismissed.

**III. Discussion**

    **A.    General Principles Applicable to Federal Habeas Review**

        **1.    Standard of Review**

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal

constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. <u>See</u> 28 U.S.C. § 2254(d)(1), (2); <u>Williams v. Taylor</u>, 529 U.S. 362, 375-76 (2000).

## 2.     Exhaustion Requirement and Procedural Default

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 843-44 (1999); <u>accord, e.g.,</u> <u>Bossett v. Walker</u>, 41 F.3d 825, 828 (2d Cir. 1994), <u>cert. denied</u>, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts". <u>Daye v. Attorney General</u>, 696 F.2d 186, 191 (2d Cir. 1982) (en banc), <u>cert. denied</u>, 464 U.S. 1048  (1984). However, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state if it is clear that the state court would hold the claim procedurally barred.'" <u>Grey v. Hoke</u>, 933 F.2d 117, 120 (2d Cir.1991) (quoting <u>Harris v. Reed</u>, 489 U.S. 255, 263, n.9 (1989) (other citations omitted). Under such circumstances, a habeas

petitioner "no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. Section 2254(b)." Id.

The procedural bar that gives rise to the finding that the claim should be deemed exhausted works a forfeiture and precludes litigation of the merits of the claim absent a showing of cause for the procedural default and prejudice resulting therefrom or by demonstrating that failure to consider the claim will result in a fundamental miscarriage of justice (i.e., actual innocence). See Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977); see also Sawyer v. Whitley, 505 U.S. 333 (1992).

**B.   Merits of the Petition**

**1.   Erroneously Admitted Hearsay Testimony**

Petitioner contends that the trial court erred in admitting the victim's statements to others about the allegations of the sexual assault, which were made a few days after the incident. Petitioner claims that the admission of this evidence under the "prompt outcry" exception to the hearsay rule denied petitioner of a fair trial. Pet. at 6. The appellate court rejected petitioner's contention:

> Although the victim informed one of the witnesses of the attack two days after it occurred and she informed the other witness of the attack three days after it occurred, we nevertheless conclude that the testimony was properly admitted under the prompt outcry exception to the hearsay rule. Although the victim previously had informed one of the two witnesses as well as another acquaintance who is a police officer that the bruises on her face were caused by a fall, we conclude that the court properly determined that the victim

> made the complaint at the first suitable
> opportunity inasmuch as the victim explained
> that she did not make the complaint sooner
> because she was ashamed and embarrassed that
> she had permitted defendant to enter her
> apartment.

Felix, 32 A.D.3d at 1178 (citing, *inter alia*, People v. McDaniel,
81 N.Y.2d 10, 17 (1993); People v. Rodriquez, 284 AD2d 952 (4th
Dept. 2001); other citations omitted).

Erroneous evidentiary rulings by a state trial court generally
do not rise to the level of due process violations upon which a
federal court may grant habeas relief. See Jenkins v. Bara, 663
F.Supp. 891, 899 (E.D.N.Y. 1987) (citing, *inter alia*, Lipinski v.
New York, 557 F.2d 289, 292 (2d Cir. 1977)). "In order for an
evidentiary error under state law to constitute a due process
violation under the federal Constitution, a petitioner must show
'that the error was so pervasive as to have denied him a
fundamentally fair trial.'" Mannino v. Graham, No. 06 Civ. 6371,
2009 WL 2058791, at *4 (E.D.N.Y. July 15, 2009) (quoting Collins v.
Scully, 755 F.2d 16, 18 (2d Cir. 1985)). Satisfying this standard
requires the petitioner to "establish that the evidence was
(a) erroneously admitted under New York law and (b) 'sufficiently
material to provide the basis for conviction or to remove a
reasonable doubt that would have existed on the record without it.'"
Id. (quoting Collins, 755 F.2d at 19).

Under New York law, evidence of a "prompt outcry" is admissible
to corroborate the allegation that a sexual assault took place. See

People v. McDaniel, 81 N.Y.2d 10 (1993) (holding that only the fact of a complaint and not its accompanying details are admissible under the "prompt outcry" hearsay exception). Statements made days or even weeks after the incident may still fall under the prompt outcry exception where the victim did not earlier disclose the fact of abuse due to fear or embarrassment. See People v. Rodriquez, 284 A.D.2d 952 (4th Dept. 2001); People v. Kornowski, 178 A.D.2d 984, 985 (4th Dept. 1991); People v. Stuckey, 50 A.D.3d 447 (1st Dept. 2008). Consistent with the case law, the testimony was admitted for the fact of the complaint. Each witness was subject to cross-examination, and the jury was instructed to consider the victim's "prompt outcry" in support of her credibility. R. 435-44, 614, 911, 1205, 1487-88, 1755-70, 1814-17. The Court observes that it is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Because petitioner has not established an error of state evidentiary law, there can be no error so pervasive as to have denied petitioner a fundamentally fair trial. See, e.g., Brooks v. Artuz, 97 Civ. 3300, 2000 WL 1532918 at *6, 9 (S.D.N.Y.Oct.17, 2000) (petitioner did not demonstrate an error under state evidentiary law, "much less" an error of constitutional magnitude). Accordingly, petitioner has not set forth a basis for habeas relief, and this claim is dismissed.

## 2. Ineffective Assistance of Appellate Counsel

Petitioner avers that he received constitutionally ineffective assistance when his appellate counsel failed to raise issues on appeal that he claims would likely have been meritorious: (1) the verdict was not supported by legally sufficient evidence and the verdict was against the weight of the evidence; and (2) the sentence was harsh and excessive. Pet. at 9, 9-B; Pet'r Mem. 10-13. The Appellate Division rejected this contention on the merits when it summarily denied petitioner's motion for a writ of *error coram nobis*. People v. Felix, 48 A.D.3d 1212 (4th Dept.), lv. denied, 10 N.Y.3d 862 (2008).

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his attorney's representation was unreasonable under the "prevailing professional norms," and that there is a reasonable probability that, but for his attorney's errors, "the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688 (1984). A claim of ineffective assistance of appellate counsel is evaluated upon the same standard as is a claim of ineffective assistance of trial counsel. Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (citing Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992)), cert. denied, 508 U.S. 912 (1993).

To establish ineffective assistance of appellate counsel for failure to raise specific issues, "it is not sufficient for the

habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous that could be made." <u>Mayo</u>, 13 F.3d at 533. Rather, counsel may "winnow[] out" weaker arguments on appeal and focus on one or two key issues that present "the most promising issue for review." <u>Jones v. Barnes</u>, 463 U.S. 745, 751-53 (1983). A habeas petitioner must demonstrate that "counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." <u>Mayo</u>, 13 F.3d at 533. To establish prejudice for failing to raise an issue on direct appeal, a petitioner must show that there was a reasonable probability that the claim would have been successful before the state's highest court. <u>Claudio</u>, 832 F.2d at 803.

The Court first observes that petitioner's appellate counsel submitted a thorough, well-researched and articulate brief to the Appellate Division, containing four points for appeal and spanning 40 pages. <u>See</u> Ex. B. Counsel also submitted an 18-page reply brief, addressing the respondent's arguments. Ex. B.  With respect to petitioner's individual claims, both are without merit.

First, there was no basis to raise a claim concerning the sufficiency of proof of attempted rape. At trial, the victim testified that petitioner grabbed the back of her head and threw her on the couch, stating that he "always finishes what he starts," before ripping open her blouse and sitting on her chest. After

putting a pillow on the victim's face to prevent her from screaming, petitioner began to unbuckle the victim's belt. The victim screamed and struck petitioner in the groin with her knee. Petitioner pinned her to the ground and tried to pull her pants down without success. He then fondled the victim with his fingers and hit her with his fist and a cordless telephone. R. 607-611. Petitioner's attempt to rape the victim was frustrated by the victim's fervent defense. While petitioner avers that there was no physical evidence collected at the scene and there was therefore no proof to connect petitioner with the crime, he cites to no case law standing for the proposition that physical evidence is required in a prosecution for attempted rape. To the contrary, attempted rape convictions have been upheld in New York courts based on proof analogous to that presented at petitioner's trial. See People v. Lamanga, 30 A.D.3d 1052 (4th Dept. 2006) (defendant knocked victim to the ground, climbed on top of her, holding towel near her face, later admitting to police he was thinking of having sex with her); People v. Peterkin, 195 A.D.2d 1015 (4th Dept. 1993) (defendant punched victim, got on top of her and fondled her, after the victim continued to fight the defendant ultimately desisted and urinated on victim); People v. Hamilton, 256 A.D. 922 (3rd Dept. 1998) (defendant grabbed victim, pulled down her pants and underwear and fondled her before victim banged on door and yelled for help). Given the case law on this matter, a sufficiency of the evidence argument would not likely have been successful on

appeal. Accordingly, appellate counsel cannot be faulted for failing to include a meritless argument. See Aparicio v. Artuz, 269 F.3d 78, 99 (2d Cir. 2001).

Second, petitioner's claim that appellate counsel should have argued that his sentence should have been reduced because it was harsh and excessive is unpursuasive. Indeed, petitioner received the maximum sentence allowable by law, 15 years, for the attempted rape conviction, which ran concurrent to seven-year terms for the assault and sexual abuse counts. For the sentencing proceeding, the victim wrote a letter to the court in which she explained that she had lost her "self-esteem, self-confidence, and . . . self-respect," that she was "unable to trust anyone" and that she "still [found] it difficult to talk about this . . . ." R. 1673. The sentencing court commented that petitioner's conduct was "severely egregious" and "vengeful," but ordered the sentences to run concurrently due to the "quality and character, content" of petitioner's supporting letters and "absolutely no prior record." R. 1680-81. The power of an appellate court in New York to reduce a sentence requires extraordinary circumstances or that the trial court abused its discretion in sentencing. See, e.g., People v. Longo, 182 A.D.2d 1019 (3d Dept. 1992). Based on this record, it is unlikely that the Appellate Division would have reduced petitioner's sentence in the interest of justice. Assuming, *arguendo*, appellate counsel was deficient for failing to challenge the length of petitioner's

sentence, it was not likely to have been successful and petitioner therefore cannot establish that he was prejudiced as a result of counsel's omission.

The Appellate Division's rejection of petitioner's ineffective assistance of appellate counsel claim was therefore not contrary to, or an unreasonable application of the Supreme Court's holding in Strickland v. Washington, and this claim is dismissed.

### 3. Petitioner's Remaining Claims are Unexhausted and Procedurally Barred

While the remaining issues in the petition, i.e., that the trial court erred in admitting evidence of prior bad acts and claims relating to the victim's identification, were raised on direct appeal, it appears that appellate counsel did not seek review of those claims in his leave letter to the New York Court of Appeals, which means that they are unexhausted because they have not been through one complete round of New York's established review process. Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991); see also O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). However, the claims must be deemed exhausted because he cannot raise them in any state court forum–he has used the one request for leave to appeal to which he is entitled and cannot seek collateral relief because the issues were previously determined on the merits on direct appeal. See Grey, 933 F.2d at 119-120; see, e.g., N.Y. Court Rules § 500.20; N.Y. Crim. Proc. L. § 440.10(2)(a) (a motion to vacate a judgment pursuant to § 440.10 must be denied where the claim " was previously

determined on the merits upon an appeal from the judgment"). That procedural default bars review here.

"Federal courts may address the merits of a claim that was procedurally defaulted in state court only upon a showing of cause for the default and prejudice to the petitioner." <u>Bossett v. Walker</u>, 41 F.3d at 829 (citing <u>Wainwright</u>, 433 U.S. at 87). Petitioner does not allege cause for the procedural default. He has also not demonstrated that failure to consider the remaining claims of evidentiary and identification errors at trial  will result in a fundamental miscarriage of justice.[3] <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991). Accordingly, those claims are subject to an unexcused procedural default and further review of them in this habeas proceeding is unavailable.

## IV. Conclusion

For the reasons stated above, Mike Felix's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed. Petitioner has failed to make a "substantial showing of a denial of a constitutional right", 28 U.S.C. § 2253 (c)(2),  the   court   declines   the   issue   of   certificate   of

---

[3] A miscarriage of justice will have occurred if the constitutional violation has "probably resulted in the conviction of one who is actually innocent." <u>Murray</u>, 477 U.S. at 496. While petitioner does aver that he is actually innocent on the basis that there was no physical evidence connecting him to the crimes for which he was convicted, <u>see</u> Pet'r Mem. at 3-4, it is well-settled that "innocence" means "actual," as opposed to merely "legal," innocence. <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995). In order to prove actual innocence, the petitioner must have new, reliable evidence of either exculpatory scientific evidence; trustworthy eyewitness accounts; or critical physical evidence that was not presented at trial. <u>Id.</u>

appealability. <u>See, e.g.,</u> <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

**SO ORDERED.**

                                    S/Michael A. Telesca

                        _____
                             MICHAEL A. TELESCA
                          United States District Judge

Dated:     February 4, 2011
           Rochester, New York